IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| MELISSA ALVARADO, Parent, Natural Guardian, and Next Friend of M.A., and M. A., a minor Child, | ) ) ) ) | |
|---|---|---|
| Plaintiffs, | ) ) ) | 4:19CV3075 |
| v. | ) ) | |
| GAIL COLLINS-BAZANT, in both her Individual and Official Capacities, and MADISON COUNTY, NEBRASKA, | ) ) ) ) ) ) | **MEMORANDUM AND ORDER** |
| Defendants. | ) ) | |

    This is a 42 U.S.C. § 1983 action challenging the removal of Plaintiff Melissa Alvarado's minor child ("M.A.") from her care for more than two years based on what Alvarado characterizes as false allegations that M.A. was in danger and that she was unfit to care for her child. Alvarado and M.A. sue Madison County, Nebraska, and its deputy county attorney, Defendant Gail Collins-Bazant ("Collins"), claiming that Collins "knowingly obtained, compiled, and utilized false or misrepresented evidence to remove M.A. from Alvarado's care." (Filing 6, Amended Complaint ¶ 45.) Plaintiffs claim that Collins "perpetuated an untrue narrative" that Alvarado was a drug addict—a narrative that influenced medical diagnoses, witness testimony and evidence offered in the juvenile-court proceedings, and the court's decisions that resulted in the continued separation of Alvardo from her minor child.

    Alvarado and M.A. bring two section 1983 claims in this lawsuit: (1) a claim against Collins alleging that she violated Alvarado and M.A.'s rights to due process under the Fourteenth Amendment when she fabricated evidence "to support or strengthen the removal of M.A. from Alvarado's care based upon an alleged drug

addiction that was not substantiated" (Filing 6 ¶ 70); and (2) a claim against Madison County for having a policy, custom, or procedure of "prosecutors investigating witnesses, gathering information, and disclosing and disseminating confidential health information to private third parties with the purpose of influencing the evidence received by the Court" (Filing 6 ¶ 82), as well as inadequate training and supervision regarding "the scope of [Collins's] role in juvenile court proceedings, limitations of [Collins's] role as a prosecutor, and the proper investigatory and administrative functions of a prosecutor in Madison County, Nebraska." (Filing 6 ¶ 87.)

Defendants Collins and Madison County have filed a Motion for Summary Judgment (Filing 12) and Motion for Rule 11 Sanctions (Filing 18), arguing that: (1) Collins did not make the decision to remove Alvarado's child from her care and, therefore, cannot be held liable under section 1983 for such removal; (2) Collins is absolutely immune from suit; (3) Collins is entitled to qualified immunity from suit; (4) Alvarado cannot prove the existence of a Madison County policy, custom, procedure, or failure to train that caused any constitutional violation; (5) the *Rooker-Feldman* doctrine prevents this court from reviewing or altering the final judgment of a state-court judicial proceeding; and (6) this court should impose sanctions under Fed. R. Civ. P. 11(b)(3) because Alvarado and M.A. brought this lawsuit either without investigating the truth of their allegations before filing suit or filing suit with the knowledge that their allegations were false.

## I. UNDISPUTED MATERIAL FACTS

1. On May 19, 2015, records of the Juvenile Court of Madison County, Nebraska, show that Melissa Alvarado's minor child, M.A., was removed from her physical custody and placed with the child's grandparents. (Filing 13-1 at CM/ECF p. 13.) At the time the removal occurred, the Department of Health and Human Services

("DHHS") had legal custody of the child.[1] (Filing 13-1 at CM/ECF pp. 1-14.)

2. On the same date that Advarado's child was removed from her physical custody, M.A., then two years old, tested positive for methamphetamine. (Filing 13-2 at CM/ECF p. 3.) Melissa Alvarado likewise tested positive for methamphetamine on June 3, 2015. (Filing 13-3 at CM/ECF pp. 2-3.)[2]

3. On July 7, 2015, the juvenile court found that "continuation of the juvenile

---

[1] The records before this court indicate that Alvarado's child was placed in DHHS custody on April 24, 2014. (Filing 13-1 at CM/ECF p. 4.)

[2] Plaintiffs admit the results of the tests, but question the weight of such results, pointing out that "the test results cannot show when the alleged exposure occurred and therefore cannot show whose custody M.A. was in at the time of the alleged exposure. Plaintiffs further aver that the drug test administered to M.A. did not discern between l-methamphetamine and d-methamphetamine." (Filing 15 at CM/ECF pp. 1-2.) As support for their argument, Plaintiffs cite only to the affidavit of Plaintiff Melissa Alvarado, who claims to be a 2006 honors graduate from Creighton University with a doctor of pharmacology degree. (Filing 16-1 ¶ 1.) Alvarado's self-serving and conclusory affidavit, which is not supported by extrinsic evidence, complains that the test did "not differentiate . . . between l-methamphetamine which is indicative of legal use and d-methamphetamine which is indicated [sic] of illegal methamphetamine use. No chiral testing was ever performed of M.A. or me." (*Id*. ¶ 37.) Alvarado states that two of the drugs she regularly takes—Vyvanse and Sudafed—can cause false positive results for methamphetamine, and that she testified during the juvenile proceedings about the need for chiral testing, but the court did not order such testing. (*Id*. ¶¶ 39, 41, 42, 44.) She claims that "[c]onfirmatory chiral testing would have showed my ratio of d-methamphetamine and l-methamphetamine within the proper range for my medication and there would have been no basis to continue M.A. in relative foster care placement with my family members." (*Id*. ¶ 45.) Alvardo's affidavit testimony states, "Once Gail Collins and NDHHS had the failed drug tests, those tests were then used to get expert witness testimony to corroborate that I was a[] drug addict." (*Id*. ¶ 46.) Even if chiral testing should have been performed, it was the failure of the juvenile court judge—not the Defendants in this action—to order such testing.

3

in his/her home would be contrary to the welfare of the juvenile," and awarded custody to the DHHS. (Filing 13-1 at CM/ECF p. 15.)

4. Melissa Alvarado admitted to using methamphetamine on July 28, 2015. (Filing 13-4 at CM/ECF p. 2.)[3]

5. Melissa Alvarado again tested positive for methamphetamine on January 20, 2016. (Filing 13-5 at CM/ECF p. 2.)[4]

6. According to the records before this court, the Madison County Juvenile Court held nine hearings regarding the custody of M.A. between May 19, 2015, and February 5, 2018. (Filing 13-1 at CM/ECF pp. 6-42.) During this time period, Defendant Gail Collins-Bazant was a deputy county attorney for Madison County who filed the juvenile petitions involving M.A. and appeared on behalf of the State of Nebraska throughout the proceedings at issue. (Filing 6 ¶¶ 10, 31, 33-37; Filing 13-1.)

7. The Madison County Juvenile Court discharged DHHS, awarded custody of M.A. back to Alvarado, and closed the case on February 5, 2018. (Filing 13-1 at CM/ECF p. 42.)

---

[3]Again, Plaintiffs do not deny that Melissa Alvarado admitted using methamphetamine, but Alvarado states in her affidavit that she was pressured to make this admission. She claims she "was told [b]y Gail Collins and NDHHS that they would terminate my parental rights if I didn't admit to methamphetamine use." (Filing 16-1 ¶ 43.)

[4]Plaintiffs do not deny the results of the test, but object to its weight for the reasons set forth in footnote 2, above.

## II. STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant bears the initial responsibility of informing the district court of the basis for its motion, and must identify those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (internal quotation marks and citation omitted).

"If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial."[5] *Id.* (internal quotation marks and citation omitted). "The nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial." *Id.* (internal quotation marks and citations omitted). Further, "[t]he mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 791-92 (8th Cir. 2011) (internal quotation marks and citation omitted).

"On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts.

---

[5]This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "The moving party can satisfy its burden in either of two ways: it can produce evidence negating an essential element of the nonmoving party's case, or it can show that the nonmoving party does not have enough evidence of an essential element of its claim to carry its ultimate burden of persuasion at trial." *Bedford v. Doe*, 880 F.3d 993, 996 (8th Cir. 2018).

Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Torgerson*, 643 F.3d at 1042 (internal quotation marks and citations omitted).

## III. DISCUSSION

**A. Motion for Summary Judgment**

    **1. Claim Against Collins**

Plaintiffs allege that Defendant Collins took "investigative" and "administrative" actions during the juvenile proceedings that caused a prolonged separation between Alvarado and M.A. in violation of Alvarado's fundamental liberty interest in the care, custody, and control of her child.[6] Among other things, Alvarado and M.A. allege that Collins knowingly fabricated evidence that Alvarado was a drug addict, conveyed this false information to Alvarado's treatment providers and witnesses which unfavorably influenced their diagnoses and testimony, and improperly investigated and gathered information from "non-reliable, felon family members." (Filing 6 ¶¶ 45-58, 64-73.)

Obviously aware that Collins is entitled to absolute immunity from civil liability

---

[6]The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." The Due Process Clause includes "a substantive component that provides heightened protection against government interference with certain fundamental rights and liberty interests." *Troxel v. Granville*, 530 U.S. 57, 65 (2000) (internal quotation marks and citation omitted). One of those fundamental liberty interests is "the interest of parents in the care, custody, and control of their children." *Id*. However, this liberty interest "is limited by the compelling governmental interest in protection of minor children, particularly in circumstances where the protection is considered necessary as against the parents themselves." *Slaven v. Engstrom*, 710 F.3d 772, 779 (8th Cir. 2013) (internal quotation marks and citation omitted).

under 42 U.S.C. § 1983 for prosecutorial functions, Plaintiffs specifically allege that they "do not assert liability against Collins based on Collins's decision to initiate proceedings; rather, Plaintiffs assert liability . . . based on Collins's investigatory and administrative actions." (Filing 6 ¶ 74.)

Plaintiffs are correct that "[p]rosecutors may be entitled to either absolute or qualified immunity from civil liability under 42 U.S.C. § 1983 for actions undertaken pursuant to their official duties. . . . Absolute immunity covers prosecutorial functions such as the initiation and pursuit of a criminal prosecution, the presentation of the state's case at trial, and other conduct that is intimately associated with the judicial process." *Brodnicki v. City of Omaha*, 75 F.3d 1261, 1266 (8th Cir. 1996) (internal quotation marks omitted) (citing *Burns v. Reed*, 500 U.S. 478 (1991); *Buckley v. Fitzsimmons*, 509 U.S. 259 (1993); *Imbler v. Pachtman*, 424 U.S. 409 (1976); *Forrester v. White*, 484 U.S. 219 (1988)). In the course of performing such functions, a prosecutor is entitled to absolute immunity, even if the actions are "patently improper" or made "in a consciously malicious manner, or vindictively, or without adequate investigation, or in excess of [the prosecutor's] jurisdiction," *Williams v. Hartje*, 827 F.2d 1203, 1208-09 (8th Cir. 1987), and even if the prosecutor has "knowingly presented false, misleading, or perjured testimony . . . or withheld or suppressed exculpatory evidence." *Woodworth v. Hulshof*, 891 F.3d 1083, 1089 (8th Cir. 2018) (internal quotation marks and citation omitted)).

This absolute immunity "extends to 'actions preliminary to the initiation of a prosecution and actions apart from the courtroom' but not to 'administrative duties and those investigatory functions that do not relate to . . . the initiation of a prosecution or for judicial proceedings.'" *Woodworth*, 891 F.3d at 1089 (quoting *Buckley*, 509 U.S. at 273-74).

First, Plaintiffs' due process claim fails because Collins's actions about which Plaintiffs complain—such as the collection of factual information from medical

7

professionals and Alvarado's family members, use of laboratory test results showing methamphetamine use, Alvarado's communication of information to relevant medical professionals (even if erroneous or misleading), and Alvarado's contacts with witnesses in preparation for the many juvenile proceedings that occurred—were all functions intimately associated with the juvenile judicial process. "Not all of an advocate's work is done in the courtroom. For a lawyer to properly try a case, he must confer with witnesses, and conduct some of his own factual investigation." *Reasonover*, 447 F.3d at 580 (internal quotation marks and citation omitted); *see also Kalina v. Fletcher*, 522 U.S. 118, 128 (1997) ("Exposing the prosecutor to liability for the initial phase of his prosecutorial work could interfere with his exercise of independent judgment at every phase of his work, since the prosecutor might come to see later decisions in terms of their effect on his potential liability." (internal quotation marks and citation omitted));*Burns*, 500 U.S. at 486 ("the duties of the prosecutor in his role as advocate for the State involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom").

Even if Collins did not have absolute immunity against Plaintiffs' due process claim, the claim would fail because Plaintiffs have not come forward with evidence on which a jury could find in her favor on this claim. The only evidence Plaintiffs present in opposition to Defendants' Motion for Summary Judgment on the Plaintiffs' due process claim against Collins is an affidavit authored by Alvarado herself outlining Collins's alleged actions, inaction, scope of knowledge, and reliance on what Alvarado views as faulty drug-test results. Plaintiffs make no showing that Alvarado is "competent to testify on the matters stated" in the affidavit, Fed. R. Civ. P. 56(c)(4), and present absolutely no extrinsic evidence otherwise substantiating the affidavit testimony, such as medical records showing that Collins improperly informed treatment providers that Alvarado was "drug seeking" (Filing 16-1, Aff. Melissa Alvarado ¶ 33); testimony from those treatment providers that supposedly affected Alvarado's right to the physical custody of her child; the "record" in which Collins allegedly stated that Alvarado "stole Adderall" from CVS Pharmacy and evidence proving that such a

statement, if made, was actually untrue (*id.* ¶ 34); evidence supporting Alvarado's claim that the drug tests that were positive for methamphetamine use were scientifically unreliable due to a lack of "chiral testing"[7] (*id.* ¶¶ 37-45); the alleged "expert witness testimony" and opinions from physicians who supposedly "used the failed drug tests as a basis for their positions" (*id.* ¶ 46); and, most importantly, anything indicating that Collins fabricated evidence, especially in the face of the positive methamphetamine drug tests from two testing laboratories that Defendants filed as evidence in support of their Motion for Summary Judgment.[8] (Filings 13-2 & 13-3.)

Simply put, Alvarado's unsupported affidavit is insufficient to avoid summary judgment on the Plaintiffs' due process claim against Collins because Plaintiffs have failed to come forward with evidence on which a jury could find in their favor on this claim. "Evidence, not contentions, avoids summary judgment." *Reasonover v. St. Louis Cty., Mo.*, 447 F.3d 569, 578 (8th Cir. 2006) (internal quotation marks and citation omitted); *see also Bedford*, 880 F.3d at 997 (in responding to motion for summary judgment, "The nonmoving party must do more than raise some metaphysical doubt about the material facts, and cannot rest on mere . . . allegations. The nonmoving party must instead present enough evidence that a jury could reasonably find in his favor." (internal citations omitted));*Conolly v. Clark*, 457 F.3d 872, 876 (8th Cir. 2006) (unsupported self-serving affidavit attempting to establish contractual terms not sufficient to defeat motion for summary judgment; "a properly supported motion for summary judgment is not defeated by self-serving affidavits"); *Davidson & Assocs. v.*

---

[7]The laboratory results at issue show the screening method as "ELISA" (enzyme-linked immunosorbent assay) and the confirmation method as "GC/MS" (gas chromatography/mass spectrometry). (Filing 13-3 at CM/ECF p. 2; Filing 13-5 at CM/ECF p. 2.)

[8]Plaintiffs have not shown "by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition" such that this court should "defer considering the motion or deny it" or "allow time to obtain affidavits or declarations or to take discovery." Fed. R. Civ. P. 56(d).

*Jung*, 422 F.3d 630, 638 (8th Cir. 2005) (to defeat a motion for summary judgment, "[a] plaintiff may not merely point to unsupported self-serving allegations, but must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor").

Accordingly, the Defendants' Motion for Summary Judgment on this claim must be granted.

### 2. Claim Against Madison County & Collins in Official Capacity[9]

Plaintiffs claim that Madison County has a policy, custom, or procedure of allowing prosecutors to investigate witnesses, gather information, and disclose and disseminate "confidential health information to private third parties with the purpose of influencing the evidence received by the Court." (Filing 6 ¶ 82.) Plaintiffs also claim that the County inadequately trained and supervised Collins regarding her "role in juvenile court proceedings, limitations of [her] role as a prosecutor, and the proper investigatory and administrative functions of a prosecutor in Madison County, Nebraska." (Filing 6 ¶ 87.)

Because Madison County is a unit of local government that is considered a "person" within the meaning of 42 U.S.C. § 1983, it may be subject to liability under that statute. *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018) (municipality can be liable under section 1983 if constitutional violation resulted from municipal policy, custom, or deliberately indifferent failure to train or supervise); *Slaven*, 710 F.3d at 780. For a county or its officers in their official capacity to be liable under section 1983,

---

[9]Plaintiffs' suit against Defendant Collins in her official capacity is actually a suit against Madison County, and shall be considered as such. *Parrish v. Ball*, 594 F.3d 993, 997 (8th Cir. 2010) (official-capacity suit against public official is actually suit against entity).

Plaintiffs must prove that the entity's policies or customs caused a violation of Plaintiffs' constitutional rights, *Los Angeles Cty., Cal. v. Humphries*, 562 U.S. 29, 32 (2010), whether the policy or custom is "made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Gladden v. Richbourg*, 759 F.3d 960, 968 (8th Cir. 2014) (internal quotation marks and citation omitted).

A municipality can be held liable under section 1983 only if there is "an unconstitutional act by a municipal employee," *Webb v. City of Maplewood*, 889 F.3d 483, 487 (8th Cir. 2018) (internal quotation marks and citation omitted), but there need not be a finding that the employee is liable in his or her individual capacity, such as when the employee is immune from suit, as is the case here. *Id*. at 487-88; *see also Evans v. City of Helena-W. Helena, Arkansas*, 912 F.3d 1145, 1146 (8th Cir. 2019) ("even if the clerk personally has absolute or qualified immunity from suit and damages, that immunity does not foreclose an action against the City if the complaint adequately alleges an unconstitutional policy or custom and an unconstitutional act by the clerk as a city employee").

Assuming, but not deciding, that there was an underlying constitutional violation here, Plaintiffs have presented absolutely no evidence of a policy[10], custom[11], or failure

---

[10] "Official policy involves 'a deliberate choice to follow a course of action . . . made from among various alternatives' by an official who has the final authority to establish governmental policy." *Jane Doe A By & Through Jane Doe B v. Special Sch. Dist. of St. Louis Cty.*, 901 F.2d 642, 645 (8th Cir. 1990) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986)).

[11] [A] plaintiff may establish municipal liability through an unofficial custom of the municipality by demonstrating (1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's

to train[12] or supervise[13] that caused a constitutional violation. Specifically, there is no evidence of a Madison County policy or custom that caused Alvarado to temporarily lose physical custody of her child; that Defendant Collins acted pursuant to any such county policy or custom; that Madison County's training of prosecutors was inadequate; that there was a pattern of similar constitutional violations by improperly trained

> policymaking officials after notice to the officials of that misconduct; and (3) that plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Mick v. Raines*, 883 F.3d 1075, 1079-80 (8th Cir. 2018) (internal quotation marks and citation omitted).

[12] A local government may be subject to § 1983 liability for inadequate training of its employees where:

> (1) the municipality's training practices were inadequate; (2) the municipality was deliberately indifferent to the constitutional rights of others, such that the "failure to train reflects a 'deliberate' or 'conscious' choice" by the municipality; and (3) an alleged deficiency in the training procedures actually caused the plaintiff's constitutional injury.

*Rodgers v. Knight*, 781 F.3d 932, 942 (8th Cir. 2015) (quoting *Canton*, 489 U.S. at 388-91). "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (internal quotation marks and citation omitted).

[13] A failure-to-supervise claim requires analyzing whether "'in light of the duties assigned to specific officers or employees[,] the need for more or different training [or supervision] is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.'" *S.M. v. Lincoln Cty.*, 874 F.3d 581, 585 (8th Cir. 2017) (quoting *Canton*, 489 U.S. at 390).

Madison County prosecutors; that Madison County had prior actual or constructive notice of such a pattern, of the inadequacy of its training procedures, and that its training procedures were likely to result in constitutional violations; or that the need for more or different supervision of Madison County's prosecutors was so obvious, and the inadequacy so likely to result in constitutional violations, that Madison County policymakers (none of whom have been named by Plaintiffs) can reasonably be said to have been deliberately indifferent to that need.[14] As was the case with Plaintiffs' first claim, "[e]vidence, not contentions, avoids summary judgment." *Reasonover*, 447 F.3d at 578 (internal quotation marks and citation omitted).

In addition, Plaintiff Alvarado's affidavit—again, the only evidence filed opposing Defendants' Motion for Summary Judgment—focuses solely on Alvarado's case and Collins's behavior in that particular case. "Generally, an isolated incident of alleged . . . misconduct . . . cannot, as a matter of law, establish a municipal policy or custom creating liability under § 1983." *Ulrich v. Pope Cnty.*, 715 F.3d 1054, 1061 (8th Cir. 2013). *See also Calgaro v. St. Louis Cty.*, 919 F.3d 1054, 1058-59 (8th Cir. 2019) ("The District's alleged handling of this particular case, even assuming that it interfered with [the plaintiff's] constitutional rights, is insufficient to establish a custom or practice under *Monell*[,] 436 U.S. at 694"; "one erroneous determination by a county employee that E.J.K. was emancipated does not establish a policy or custom of the County that deprives parents of their constitutional rights"); *Mettler v. Whitledge*, 165 F.3d 1197, 1205 (8th Cir. 1999) (shortcomings in investigation of one case did not demonstrate continuing, widespread, or persistent pattern of misconduct; stating that "[a] single incident normally does not suffice to prove the existence of a municipal custom"); *Parsons v. McCann*, 138 F. Supp. 3d 1086, 1100 (D. Neb. 2015) (allegations of police

---

[14]*See Larkin v. St. Louis Hous. Auth. Dev. Corp.*, 355 F.3d 1114, 1117 (8th Cir. 2004) (to survive summary judgment on failure-to-train claim, plaintiff must show that need for training was patently obvious, or that pattern of misconduct indicated responses to regularly recurring situation were insufficient).

13

misconduct during one investigation of one student not sufficient to allege continuing, widespread, persistent pattern of unconstitutional misconduct by City of Omaha police); *Youa Vang Lee v. Anderson*, No. CIV.07-1205, 2009 WL 1287832, at *7 (D. Minn. May 6, 2009), *aff'd sub nom. Lee v. Andersen*, 616 F.3d 803 (8th Cir. 2010) (city not liable under § 1983 for alleged failure to properly investigate one incident of police misconduct when "Plaintiff has not produced any evidence that Minneapolis failed to investigate previous incidents of police misconduct").

In light of the Plaintiffs' failure to show that there is a genuine issue for trial, the Defendants' Motion for Summary Judgment on the Plaintiffs' claim against Madison County will be granted.

## B. Motion for Sanctions

Defendants have filed a Motion for Rule 11 Sanctions (Filing 18) under Fed. R. Civ. P. 11(b)(3)[15], asserting that sanctions should be imposed against Plaintiffs' lawyers—and not Plaintiffs themselves—because counsel brought this lawsuit either without investigating the truth of Alvarado's allegations before filing suit or filing suit with the knowledge that her allegations were false. Specifically, Defendants argue that Plaintiffs' counsel falsely alleged in their Complaint that Defendant Collins fabricated evidence to "paint a false narrative that Ms. Alvarado was using illegal drugs" without a good-faith basis for such claims. Further, Defendants complain that Plaintiffs' counsel refused to withdraw or amend their allegations when the Defendants forwarded to Plaintiffs' counsel "copies of positive drug tests for both Ms. Alvarado and her child

---

[15]Rule 11(b)(3) provides in part: "By presenting to the court a pleading . . . an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery . . . ."

14

M.A., and a written admission of methamphetamine use by Ms. Alvarado." (Filing 19-2 at CM/ECF p. 2.)

The Plaintiffs' lawyers did not act in an objectively unreasonable manner in relying upon the factual information provided by Alvarado—who claims to have a doctorate degree in pharmacology with honors—at the time of filing this lawsuit and in concluding that such allegations would "likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3). While the information provided in the affidavit of Plaintiff Alvarado was insufficient for purposes of overcoming a summary judgment motion because it was conclusory and self-serving, the Plaintiffs' lawyers did not act unreasonably in relying upon such information at the time of filing, and upon the affidavit she later submitted regarding another drug-testing method, given her self-proclaimed expertise. That is to say, the pleadings have some evidentiary support, although not sufficient to avoid summary judgment. Fed. R. Civ. P. 11(b)(3). Therefore, the Motion for Sanctions will be denied.

IT IS ORDERED:

1. Defendants' Motion for Summary Judgment (Filing 12) is granted;

2. Defendants' Motion for Rule 11 Sanctions (Filing 18) is denied; and

3. Judgment shall be entered by separate document.

DATED this 8th day of January, 2020.

BY THE COURT:

*Richard G. Kopf*

Richard G. Kopf
Senior United States District Judge